EDDIE FEYERCHAK v. STATE OF INDIANA

[No. 777S541. Filed December 27, 1978.]

158

*George T. Popcheff*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Jack R. O'Neill*, Deputy Attorney General, for appellee.

DEBRULER, J. — Appellant was charged with commission of a felony while armed, to-wit: robbery, and convicted thereof in the Criminal Court, Division 4 of Marion County in a trial by jury on August 9, 1976. He was sentenced to a determinate sentence of twenty-five years.

Appellant raises several issues:

(1) whether the trial court erred in denying a motion for change of venue from the county;

(2) whether it was error to deny a motion for continuance of the trial;

(3) whether evidence which showed the defendant committed another crime, separate and distinct from the charged offense, was proper;

(4) whether the court properly refused an instruction that assault is a lesser included offense of armed robbery; and

(5) whether the trial court correctly instructed the jury relative to its discretion to assess punishment.

Appellant was charged with armed robbery of one Mike Stovall, the assistant manager of the Loew's Theater in Indianapolis. The alleged crime occurred at approximately 11:15 p.m. on the 24th of January, 1976.

The testimony of the theater employees described the events. After the ticket office closed, the cashier went up to a man standing in the lobby and asked him if there was anything she could do for him. The man said, "Where's the manager?", and she replied, "Wait here, I'll go get him." As she walked away the man followed her and she again told him to wait in the lobby. The man then pulled a ski mask down over his face, pulled a small gun, and told her, "Don't you dare tell anybody what I look like or I'll kill you." The employees including the manager, Mike Stovall, were then required to get down on the floor and the man took $895 in one dollar bills, most of which were wrapped. He then left the theater. At trial the cashier identified appellant as the robber. The other employees described the man as wearing a gray ski mask with black trim, CPO jacket, brown slacks, brown shoes, approximately 5'4" tall and weighing 150 to 160 pounds, carrying a black handgun and smelling of alcohol.

The bartender and other employees of a nearby restaurant located on the same parking lot as the Loew's Theater were called by the prosecution and were permitted to testify over objection by the defense. Their testimony disclosed that at 1:00 a.m. on the same night as the Loew's robbery a man in a ski mask entered the kitchen and ordered the employees to sit down with their hands in the air. He then moved into the bar area and ordered everybody to get down on the floor. The customers took the command as a practical joke but the man fired a shot in the ceiling and everyone dove to the floor. A waiter quickly exited the area and was observed by the robber who again fired a shot in the ceiling and ran from the bar area. Thereafter, unable to gain control of the situation the robber left the restaurant. The waiter and a security officer followed the robber who drove away in a car, and with the aid of a deputy sheriff, the car was finally stopped. Appellant was arrested and two guns, several items of clothing, some of which met the description of clothing worn in the Loew's robbery, and the money from the Loew's robbery were found in the car. The bartender identified appellant as the masked man. He was able to do so according to the testimony because appellant had entered the restaurant earlier that same night and had been served several drinks at the bar and had drawn attention to himself. The bartender noted his voice and general ap-

pearance at the time, and it was these characteristics which betrayed his identity on the later occasion when he returned and attempted the robbery.

## I.

The change of county motion was predicated upon the fact that a prosecution witness was employed by the Marion Criminal Court, Division 1, a branch of the same court in which the case was to be tried and was also the daughter of a well-known and respected federal magistrate from Indianapolis. Review of the ruling on this motion in this case is limited by the record presented on appeal to the assertions on the face of the motion, and we are asked to conclude from them that the impartiality in the trial court not be maintained as required by Canon I of the Code of Judicial Conduct. In this posture the ruling cannot be regarded as error, as at the time it was made during the pretrial period, the facts alleged created little probability that the future trial could not be conducted in a fair and impartial manner and in an appropriate neutral atmosphere. There is for example no allegation that wide publicity had been given the facts asserted or that the many available techniques for limiting the jury's knowledge of such facts or its access to them at trial would be to no avail. Even if the jury were in some inadvertent manner to gain knowledge of the employment and parentage of the witness there is little likelihood that the jury would thereby be unable to respond appropriately to the court's instructions regarding the credibility of the witnesses and to judge the credibility of the witness fairly. There is, moreover, little likelihood that the jury would view the witness as an employee of the very "court" in which they were serving, but would rather view the witness as an employee of a different and separate court because it was presided over by a different judge and maintained separate accomodations. Therefore the probability that a jury would enhance the witness' credibility because of her employment and parentage would not be significantly different were the trial to be moved to a different county in the State.

## II.

Appellant made a motion for continuance of the trial five days prior to the date scheduled for the trial to commence and again on the first

day of trial. Appellant claimed to be without funds and in need of the postponement in order to procure witnesses from out of state, possibly from Cleveland, Ohio and Alaska. These assertions were vague and unsubstantiated and consequently provided little basis for evaluating the impact of the loss of the witnesses' testimony upon the presentation of a conceived defense. Moreover at the time the motions were made appellant had been in jail on this charge for more than six months. Given the ample opportunity of appellant to marshall his evidence, the lateness of the motion, and its lack of specificity, the trial court had a reasonable basis for its ruling. *Calvert v. State,* (1968) 251 Ind. 119, 239 N.E.2d 697; *Traylor v. State,* (1975) 164 Ind.App. 50, 326 N.E.2d 614.

### III.

Feyerchak also argues that the trial court erroneously admitted the evidence that he attempted to rob the Victoria Station restaurant. Such evidence of separate and distinct crimes by the accused is as a general rule deemed inadmissible. *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843; *Thornton v. State,* (1978) 268 Ind. 456, 376 N.E.2d 492.

> "Such evidence is never admissible to prove the bad character or 'criminal bent' of the accused. (Citations omitted.) But evidence of other conduct by the accused is admissible notwithstanding its tendency to show him guilty of other crimes if that evidence tends to prove a fact in issue and if its probative value outweighs its prejudicial effect. (Citations omitted.)" *Bruce v. State,* (1978) 268 Ind. 180, 375 N.E.2d 1042, 1077.

At trial the only direct eyewitness testimony that appellant was the perpetrator of the Loew's robbery came from the cashier. She had only a brief opportunity to observe the robber's face before he pulled the ski mask down over his face, and therefore there was a distinct possibility that her evidence alone would not be accepted by the jury as sufficiently persuasive. The challenged evidence would have permitted the inference that appellant was in possession and control of the automobile in which he was arrested and therefore of its contents including the proceeds of the Loew's robbery, for the entire period between that robbery and his arrest in the automobile. It likewise places him in posses-

sion of a ski mask meeting the description of the one used in the Loew's robbery for the same period of time with like effect. Therefore such evidence was properly admitted on the issue of identity.

## IV.

Appellant contends that the trial court committed error in failing to instruct the jury that assault is a lesser included offense of armed robbery. We would agree that the crime of assault is a lesser and included offense of the crime of armed robbery under the traditional test set forth in *Watford v. State,* (1957) 237 Ind. 10, 143 N.E.2d 405; *Hallums v. State,* (1968) 249 Ind. 309, 232 N.E.2d 597; *Hazlett v. State,* (1951) 229 Ind. 577, 99 N.E.2d 743. However, since these last cited cases were decided, this Court has sanctioned the refusal to give an instruction upon a lesser and included offense where "the evidence produced to prove the element or elements differentiating the alleged greater and lesser offenses . . . has substantial probative value and is not in serious dispute." *Lawrence v. State,* (1978) 268 Ind. 330, 375 N.E.2d 208, 213; *Hash v. State,* (1972) 258 Ind. 692, 284 N.E.2d 770; *Hester v. State,* (1974) 262 Ind. 284, 315 N.E.2d 351. Here there was overwhelming evidence on each element of the crime charged and the only issue which could be deemed in serious question was the identity of appellant as the perpetrator. It was not, therefore, error to refuse the instruction requested.

## V.

The jury returned a verdict of guilty and selected twenty-five years as the appropriate period of confinement. In so doing it selected this period from a range of ten to thirty years. Appellant's final contention is that the trial court erred in failing to provide the jury with "guidelines" to follow in arriving at the appropriate determinate sentence. Appellant verbally requested the court to give an instruction guiding its discretion in assessing punishment, but tendered no such instruction and suggested no content for such an instruction. Likewise on appeal no content for such an instruction is posited and no authority is cited that the failure to instruct a jury on such "guidelines" is error. If, as we are led to believe, the guidelines referred to would require the jury to increase or decrease its assessment of punishment within the range of years pro-

vided for by the statute, then the authority for establishing such considerations would fall within the ambit of the legislative prerogative to fix punishments. *Lowe v. State*, (1973) 260 Ind. 610, 298 N.E.2d 421. Upon the merits of the contention made, we are unable to conclude that the trial court erred as contended.

The conviction is affirmed.

Givan, C.J., Hunter, Prentice, and Pivarnik, JJ., concur.

NOTE—Reported at 383 N.E.2d 1023.