**John R. DUMBSKY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1185S466.

Supreme Court of Indiana.

June 18, 1987.

Walter J. Alvarez, Walter J. Alvarez, P.C., Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

This case requires us to decide whether an officer who tries to fit a gas cap on a truck belonging to a defendant whom he is arresting has violated the Fourth Amendment prohibition against unreasonable searches.

Appellant John R. Dumbsky was convicted of robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1985 Repl.). The trial court sentenced him to twelve years.

Besides his Fourth Amendment claim, Dumbsky raises three other issues on appeal. First, whether the verdict was supported by sufficient evidence. Second, whether the photographic array used to identify him was impermissibly suggestive. Third, whether the trial court stated sufficient grounds to impose a twelve year sentence.

The evidence at trial showed that around 11 p.m. on August 26, 1984, a man walked into a Martin gas station in Highland, Indiana, and told cashier Sheila Kipp to give him all the money. The man looked like a truck driver and Kipp thought he was joking. The man yelled a bit louder. He pointed a knife at her. Kipp backed up and touched fellow employee Randal Rodgers on the shoulder.

Rodgers was working at another counter that faced the other way. He heard the man and also thought he was a truck driver playing a joke. When Kipp reached out, Rodgers realized the man was not joking. He tried to bluff the man by saying he could not open the register.

The robber pushed the buttons on the cash register, but it did not open. He said, "You better open it, or I'm going to have to cut you." Rodgers opened the register and gave the man the money. He called the police and then ran after the robber.

Rodgers was joined in the chase by Rodger Nemec, a customer who had just arrived to purchase gas. Nemec noticed the disruption inside the station and saw the robber come out with a knife in his hand. Rodgers then exited and the two chased the man.

The man fled through a vacant lot and onto 81st street. During the chase he turned around, shaking the knife and yelling. The man darted in front of a car and then moved around it. Seconds later Rodgers ran in front of the same car trying to get it to stop. He ran around to the side window, but the driver rolled up her window because she did not know Rodgers.

Brenda Hardison and her sister were in the car. Hardison noticed the first man who ran in front of the car had a knife in his hand and had jumped into the passenger's side of an old red truck. Meanwhile, Nemec saw the man get into a red pickup truck on a side street off of 81st. Nemec went back to the gas station, got gas and watched for a truck to pull out. While pumping gas he found a red gas cap. Nemec's friend, Wayne Ivak, threw it into the back of the pickup. Shortly before the robbery a red truck had stopped for gas at the Martin station.

Nemec drove out of the station and came to 81st street. He saw the red pickup truck pull out and moved up beside it. He saw the man he chased sitting in the passenger's seat and noticed the truck's gas cap was missing. He took down the license number, turned around and went back to the gas station.

The police arrived at the gas station and questioned Kipp and Rodgers, Hardison

and her sister, and Nemec and his friend. Nemec reported the license number to the truck and turned over the red gas cap he found. The robber was described by the witnesses as a fairly young, white male with long sandy blonde hair and a full beard. He wore a flannel shirt, baseball cap and sunglasses.

The witnesses went to the police station to view a photographic lineup. Detective Barnes used six pictures in the array. One of the photographs was of Dumbsky, the man who owned the red truck with the license plate reported by Nemec. Barnes placed tape at the bottom of the pictures to preclude the witnesses from knowing the names. They all identified Dumbsky as the man they saw.

Two days later Detective Barnes went to Dumbsky's house with a warrant for his arrest. He saw an old red pickup truck on the driveway. The license plate on the vehicle was the same as the one given earlier in the investigation. Barnes took a photograph of the whole truck. He noticed the gas cap was missing and took a picture of the side of the truck without the gas cap. Barnes had the gas cap which had been given to him two days earlier at the station, and he tried it on the truck. It fit. He photographed the truck with the gas cap.

I. *Admission of Photographs of Truck*

Appellant argues the trial court erred when it admitted the three photographs of the red pickup truck. One of the pictures shows a full view of the truck. A second photograph is of the side of the truck without the gas cap. The last one pictures the truck with the gas cap found at the gas station. Appellant asserts the photographs are the products of an unreasonable search without a search warrant and therefore the trial court should have granted his motion to suppress.

The first two photographs are indubitably not products of an unreasonable search. "What a person knowingly exposes to the public ... is not a subject of

Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967). When a vehicle is parked at some location where it is readily subject to observation by the public, police do not "search" it when they take photographs of the vehicle. *Fisher v. State* (1973), 259 Ind. 633, 641, 291 N.E.2d 76, 80. Although *Fisher* dealt with a vehicle in a vacant lot, we find no meaningful distinction when a vehicle is in a private driveway and the police are properly on the property pursuant to an arrest warrant.

The more intriguing question concerns the third picture. Appellant claims that when Detective Barnes tried the gas cap on the truck the Fourth Amendment was violated and the photograph should have been suppressed as the product of an unreasonable search. The search was not incident to arrest, appellant notes, and the warrant for the arrest did not include the making of any experiments. Appellant suggests that the truck could have been watched until the police obtained a search warrant to try the gas cap on the pickup.

We start by determining whether the experiment was a search. The most helpful analogy appears in *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). In *Cardwell* the police were investigating a homicide. The victim had died of gunshot wounds, and his body was found near his car on the banks of a river. The car had gone over an embankment and had come to rest in brush. Foreign paint scrapings were removed from the right rear fender of the victim's car. The police requested the defendant to appear for questioning in connection with the investigation. After questioning, the police placed the defendant under arrest and had his car towed to the police impoundment lot. The next day a technician took a small paint sample from the car and determined it matched paint on the fender of the victim's car. Speaking for a plurality of the court, Justice Blackmun concluded the procedure was not a search.[1]

---

1. Justice Powell concurred in the result on a procedural ground without reaching the merits. The dissenters also found it unnecessary to consider the question of the later examination. They argued the search was irrelevant because

In the present case, nothing from the interior of the car and no personal effects, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence. With the "search" limited to ... the taking of paint scrapings from the exterior of the vehicle ... we fail to comprehend what expectation of privacy was infringed.

*Id.* at 591, 94 S.Ct. at 2470, 41 L.Ed.2d at 335 (footnote omitted).

Another analogy is the identification of a car through the use of a key. In *United States v. DeBardeleben*, 740 F.2d 440 (6th Cir.), *cert. denied*, 469 U.S. 1028, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984), a Secret Service agent unlocked a car door with a key taken from the suspect. The agent relocked the door without opening it. "The agent ... did not *search* the Chrysler but merely *identified* it as belonging to defendant." *Id.* at 445 (emphasis in original).

■ We conclude that Detective Barnes did not "search" appellant's truck. Barnes merely identified the gas cap as belonging to the truck. It is hard to identify any expectation of privacy which was infringed. The police were legally on the property, they obtained the gas cap legally, and then they photographed the gas cap in the truck. The experiment with the gas cap was even less intrusive than the removal of paint allowed in *Cardwell*. The trial court properly admitted the picture of the red truck with the gas cap.

## II. *Sufficiency of Evidence*

■ Appellant contends the conviction was not supported by sufficient evidence. At trial appellant presented Mark Kittelson who testified that he had a party on August 26, 1984, the night of the robbery, and that the appellant was at his house all night. Kittelson said the appellant allowed a friend to borrow the red truck to buy some beer. The friend was gone from 10 p.m. until midnight. Appellant also called Nemec's friend, Wayne Ivak, who testified he was not positive that Dumbsky was the robber. Appellant specifically challenges the evidence of identification. He claims the testimony of the witnesses who identified him is inherently improbable and does not establish him as the robber beyond a reasonable doubt.

The appellant's argument strikes at the credibility of the witnesses. Generally, we do not judge the credibility of witnesses. If the only testimony supporting a conviction is inherently improbable, however, this Court has held the evidence to be insufficient. *Rodgers v. State* (1981), Ind., 422 N.E.2d 1211, 1213. We consider the evidence most favorable to the judgment and make all reasonable inferences. If there is substantial evidence that would permit a rational trier of fact to conclude the accused was the perpetrator beyond a reasonable doubt, then this Court will affirm the judgment. *Miller v. State* (1986), Ind., 500 N.E.2d 193.

Here the witnesses's testimony is not inherently improbable. Inherently improbable testimony is unreliable testimony. For example, this Court found the uncorroborated, coerced, and equivocal testimony of a lone eyewitness to be insufficient. *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658. Four witnesses unequivocally identified the appellant as the robber. We could find no evidence to indicate that any of the witnesses were coerced. All the testimony, except for the alibi witness, is consistent. The testimony of identification was sufficient to support the conviction.

## III. *Impermissibly Suggestive Photographic Array*

The photographic array contained six photographs. Five of the six individuals pictured had dark hair. Appellant had light hair. Because the witnesses described the robber as having sandy blond hair, he claims the identification procedure was impermissibly suggestive and therefore conducive to a mistake of identity.

■ A photographic array is impermissibly suggestive when its use raises a substantial likelihood of misidentification given the totality of the circumstances. The fact

the police seized the car itself before taking the        paint scrapings.

that a defendant is the only one in an array with a particular characteristic related to his hair does not, by itself, make the array impermissibly suggestive. *Little v. State* (1985), Ind., 475 N.E.2d 677, 682 (defendant only person in a lineup with disheveled hair does not necessarily make it unconstitutionally suggestive); *Lawrence v. State* (1985), Ind., 476 N.E.2d 840, 842 (array is not automatically suggestive when defendant is the only person with braided hair).

■ The witnesses described the robber as a white male with long blond hair and full beard wearing a flannel shirt and sunglasses. All of the six men pictured in the photographic array had long hair. Four had full beards and mustaches, and only one had no facial hair at all. Two had glasses, and four had on flannel shirts. Although only the appellant had blond hair, another one had light brown hair. None of the witnesses described the robber solely by the color of his hair; all of them mentioned various features. The photographic array by itself does not raise a substantial likelihood of misidentification.

Beyond the array itself, this Court must consider the totality of the circumstances in which the photographs were used. Detective Barnes had each witness separately view the array. He told them to pick out the robber if they saw him among the six. If they could not identify the robber, they were told not to pick out anybody. He did not tell them one of the pictures was the man who owned the red truck. All the witnesses who viewed the array identified the appellant.

Each witness had an opportunity to view the robber. Kipp and Rodgers saw him in a well-lighted gas station. Nemec got shoulder to shoulder with the man as he fled, and Hardison saw him as he ran in front of the car. The police's use of the array and the pretrial identification by the witnesses does not raise a substantial likelihood of misidentification. Therefore, we conclude the photographic identification was not impermissibly suggestive.

IV. *Enhanced Sentence*

Appellant argues that the trial court's reasons for enhancing the sentence were deficient. Particularly, he claims the court's statement does not explain why the circumstances were aggravating in this particular case. Appellant also asserts the trial court did not weigh the mitigating factors, and therefore the balance was incomplete.

■ A sentencing statement must contain three elements. First, the statement must identify all the significant mitigating and aggravating circumstances. Second, it must state the specific reason why each circumstance is considered to be mitigating or aggravating. Third, it must balance the mitigating and aggravating factors. *Robinson v. State* (1985), Ind., 477 N.E.2d 883, 886. These requirements serve a dual purpose. They guard against arbitrary and capricious sentencing, and they provide an adequate basis for appellate review.

■ In this case, we find the trial court's statement more than adequate. The trial court found an absence of any mitigating circumstances except for possible employment. The aggravating factor was the appellant's prior criminal record, particularly a 1980 robbery conviction in the same court. An enhanced sentence can be imposed when the only aggravating circumstance is a prior criminal history. *Markham v. State* (1985), Ind., 484 N.E.2d 573, 575. Having imposed the minimum sentence for the defendant's 1980 offense, the trial court concluded that further leniency was inappropriate. Because the trial court found no mitigating factors, the balance was struck in favor of an enhanced sentence. The trial judge said, "I don't know what the court can find here to be mitigating. Everything I see before me seems to be aggravating." The balancing was complete because the trial court found nothing on one side of the scale. The court's statement is sufficient to enhance the presumptive sentence by two years.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.