**Stephen FRAYLON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00–8803–CR–356.**

Supreme Court of Indiana.

Aug. 25, 1989.

Daniel L. Bella, Appellate Division, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Robbery, a Class A felony, and being an habitual offender. He was sentenced to thirty-five (35) years enhanced by thirty (30) years by reason of his habitual offender status.

The facts are: On August 26, 1985 at approximately 2:00 p.m., Elizabeth Moore was behind a display case in Woodmar Jewelers in Hammond, Indiana cleaning a tray of diamond earrings. Two black men entered the store, and one of them ordered her to put the tray of earrings in a bag he was carrying. The other man, later identified as appellant, was holding a black handgun. Moore called out for "Fred" Mess-

man, the owner of the store. The man with the gun proceeded toward the back of the store where he met Messman, who was responding to Moore's call. When Messman saw the gunman, he turned toward the safe and was shot several times, wounding him in the face, arm, chest, and back. Jane Sullivan, Messman's daughter, also was working in the store at the time of the robbery and activated a silent alarm button. Following the shooting, the robbers left hurriedly.

Joseph Spriggs, who testified that he was employed by the Indiana State Police as a weighmaster, had just entered his automobile near the jewelry store when he observed two black males running down the street. He watched the men run to a gangway and enter. He noted that one of the men was carrying what appeared to be a briefcase and that one of them was carrying a pistol. He continued to watch the gangway and shortly saw a white Camaro emerge with a lady driving. No one else was visible in the car. Spriggs wrote down the license number of the car. Spriggs then went to the store and aided the victims. After hospitalization and several operations, Messman is recovering from his wounds.

Allen Smith testified that he is employed by Fayva Shoes near the Woodmar Jewelry Store. He stated that just prior to the robbery of the jewelry store, two black men, one of whom he identified as appellant, were in his store and that he heard one of them say, "She's at the jewelry store, let's go to the jewelry store." He testified that one of them was carrying a blue nylon bag with a red, white, and blue strap. A bag of similar description was later recovered from the white Camaro which had been observed by Spriggs.

Barbara Brown, the driver of the white Camaro, testified that appellant was her boyfriend, that the Camaro was registered in her mother's name, and that she used her mother's car to take appellant and a friend of his to the Woodmar Shopping Center on the day of the robbery. She said she remained in the car in a nearby parking lot and that appellant's friend left the car

first, saying he was going to the Fayva Shoe Store. Shortly thereafter, appellant left and presumably joined his friend. She said that after ten or fifteen minutes she heard gunshots and appellant and his friend came running toward the car, appellant carrying a black handgun and a black tray. The two men got into the car and both lay down and directed Brown to drive away. As she was driving, she heard the friend ask appellant, "Did you shoot him?" To which appellant responded, "Yes, I think I killed him."

Later, with Brown's consent, the police searched the automobile and found a blue tote bag fitting the description of the bag carried by the robbers during the robbery. Brown was arrested for assisting a criminal, a Class C felony, and later entered into a plea agreement calling for her to cooperate in the prosecution of appellant.

Jack Schafner testified that he is a pawnbroker with his shop located on Broadway in Gary, Indiana. He testified he purchased six to eight pairs of earrings for $200 from appellant in the early part of September 1985. Later, the earrings were identified by Messman and returned to him.

■ Appellant claims the trial court erred in refusing to allow fees for attendance of out-of-state witnesses and in refusing his request for a continuance when out-of-state alibi witnesses were not returned to Indiana to testify on appellant's behalf. Shortly after charges were filed against appellant, an alibi notice was filed. Hearing was held before the court, at which time counsel for appellant moved that the court provide public funds to obtain three alibi witnesses—Delphine Anderson, Kim Anderson, and Sherry Anderson—from St. Louis, Missouri.

The trial court found at that time that the witnesses should be subpoenaed and brought to Indiana at public expense, and that it was necessary to do so in order to afford appellant a fair defense. However, the auditor of Lake County informed the judge that no money was available to pay the approximately $190 each for the requested witnesses. The auditor indicated that the money would be available at a later time.

As the trial date approached, appellant's counsel informed the court that they had not yet been able to obtain the presence of the witnesses. At a hearing conducted on August 21 and 24, 1987, it was pointed out that one continuance already had been granted in order to obtain the witnesses.

Counsel then notified the trial court that Mr. Holle, chief investigator for the Public Defender's office in Lake County, made contact with one Pam Ayres in the city investigator's office in St. Louis, who in turn contacted one of the Anderson women, and was told that none of the Andersons knew either appellant or his companion in the robbery, Anthony White, and that appellant was not in St. Louis on the 26th of August, the day of the crime.

Mr. Holle was furnished with an unlisted telephone number; he called and talked with Sherry Anderson. She indicated to him that she did not know appellant or an individual by the name of Anthony White and that appellant certainly was not in St. Louis on the 26th of August 1985.

In addition, Mr. Gatley, an investigator with the Public Defender's office in Lake County, testified that on the day before, he went to an address in East Chicago trying to find Angie Griffin, a person also named by appellant as a potential alibi witness. A woman at that address told him that Angie Griffin lived there but was not at home. The woman told him that Miss Griffin was not in St. Louis with appellant or Mr. White on the date in question, and she was not going to come to court to lie for appellant.

Following receipt of this information, the trial court ruled that the trial would proceed notwithstanding the court's earlier ruling that appellant was entitled to have the witnesses subpoenaed. With the development of the information above described, the trial court was well within his discretion in ruling that a further continuance would not be of benefit to appellant and that the trial should proceed. *See Feyerchak v. State* (1978), 270 Ind. 157, 383 N.E.2d 1023.

■ Appellant claims the trial court erred in denying his motion to suppress

out-of-court lineup identifications and erred in admitting such evidence over his objection at trial. Although the various witnesses who identified appellant had been given photographs of six different individuals from which to attempt to pick out the perpetrators of the crime, appellant argues that such a photographic lineup was improper because three of the six persons depicted were men with full-face beards, whereas appellant did not have a beard.

We have held that a photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances. *Dumbsky v. State* (1987), Ind., 508 N.E.2d 1274. However, we also have held that mere variation in the appearance of individuals in an array does not render an array impermissibly suggestive. *Neal v. State* (1988), Ind., 522 N.E.2d 912.

In a situation very similar to the case at bar, we have held that where a defendant is the only one in the array with a particular characteristic relating to his hair, this fact does not by itself make the array impermissibly suggestive. *Dumbsky, supra.* Appellant also quotes testimony of the various witnesses at length in his brief, attempting to demonstrate that they were equivocal in their identification in many respects. However, this was evidence which was placed before the jury for its evaluation.

When one examines in its entirety the evidence of the identification of the various eyewitnesses and also the testimony of Brown, who drove the getaway car following the robbery, it becomes apparent that the jury had ample evidence before it from which it could determine that appellant was properly identified as one of the robbers.

We see no reversible error in this case. The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.