Edward Lee **WEBSTER**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 29A02–9009–CR–510.

Court of Appeals of Indiana, Second District.

Oct. 21, 1991.

---

Steven J. Moss, Jeffrey S. Zipes, Coots Henke & Wheeler, Carmel, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

Edward Lee Webster appeals his convictions of three counts of burglary, class B felonies,[1] and three counts of theft, class D felonies.[2] He was also determined to be an habitual offender.[3]

We affirm.

---

1. IC 35–43–2–1 (1988).

2. IC 35–43–4–2(a) (1988).

3. IC 35–50–2–8 (1991 Supp.).

## ISSUES

1. Whether the trial court erred in admitting evidence seized inside Webster's residence.

2. Whether the trial court erred in admitting certain identification evidence.

3. Whether the trial court erred in sustaining the State's objection to Webster's alibi evidence.

4. Whether the evidence is sufficient to support Webster's convictions.

## FACTS

Between February 21 and 25, 1989, the Carmel residences of Peggy Anderson, Teresa Hurst, and James and Sharon Sims, respectively, were burglarized. In each instance, entry was gained by prying open the front door. Electronic equipment, home furnishings, clothing, and jewelry were taken. Willard Helton, the maintenance supervisor at the Simses' apartment complex, reported to police officer Bruce Graham that, approximately two hours before the Simses' door was discovered open, he spoke to a man knocking at the Simses' door. The man got into a gray car and drove away. Helton later identified the man as Webster from a photographic array.

Some of the Simses' property was found in Arnell Gilbert's possession. In an interview with Graham and Lieutenant Gregory Meeks, Gilbert confessed he and Webster burglarized the three residences and divided the stolen property between themselves. Webster told Gilbert he was confronted by a man at the door of one of the burglarized residences and drove around for a short time to avoid suspicion before he returned for Gilbert who was inside the residence.

Meeks obtained a search warrant for Webster's residence. Anderson's television was in the basement of the residence; Hurst's stereo was upstairs; and the Simses' clothing was in the basement. Webster's sister, who lived with Webster, told police Webster brought the items into the house. Webster's car was gray.

Webster was convicted of three counts of burglary and three counts of theft and found to be an habitual offender. Webster appeals.

## DISCUSSION

### I.

Webster argues the trial court erred in refusing to suppress evidence seized from his home because the search warrant was invalid. Webster's objections to the proffered evidence at trial were overruled.

Webster argues the search warrant failed to comply with IC 35–33–5–3 (1988) because the trial judge did not sign the original warrant or state the time of issuance.

An unsigned copy of the search warrant was placed in the court files. However, a search warrant which bears the issuing judge's signature and the time, place and signature of the officer who executed the warrant was filed with the clerk on March 15, 1990 and also appears in the order book. Hence, there is no merit to the argument the warrant was invalid because it was unsigned.

■ Moreover, the signature of the issuing judge on a search warrant is a ministerial requirement, and the failure of the judge to sign the original or a copy of the warrant does not invalidate the warrant provided the judge found probable cause existed and intended to issue the warrant. *State v. Smith* (1990), Ind.App., 562 N.E.2d 428, 430. Here, an order book entry dated March 9, 1989 records both events.

■ Neither is the warrant invalid although it does not record the time it was issued. While the suggested form for a search warrant contained in IC 35–33–5–3 (1988) specifies the time the warrant is issued, the statute further provides substantial compliance with the suggested form "shall be sufficient." Webster provides neither authority nor persuasive argument for his claim the warrant's failure to recite the time it was issued, as compared to the time it was served,[4] renders

---

**4.** The search warrant reflects the search was conducted at 5:15 p.m. on the date it was issued.

the search warrant invalid. We find no harm.

Webster also argues the search was invalid because the executing officer failed to make a return of the warrant indicating the date and time the warrant was served and listing the items seized as required by IC 35–33–5–4 (1988).

■ The search warrant was issued on March 9, 1989. The warrant, as subsequently filed, records it was executed at 5:15 p.m. on March 9, 1989. The separate "Return of Warrant" which lists the items seized was dated the same day. It also was returned to the Hamilton County Prosecutor's Office on March 9, 1989 but was not filed with the clerk until March 15, 1990. However, the delay in filing the return does not constitute reversible error. There is no requirement the return be filed within any specific period of time. Further, there is no showing Webster was harmed by the delay. Webster was provided a copy of the then-unfiled return through pre-trial discovery on April 18, 1989.

The warrant to search Webster's residence was valid. The trial court did not err in admitting evidence seized from the home pursuant to the warrant.

## II.

■ Webster claims the trial court erred in admitting Helton's identification evidence. Helton identified Webster as the man he confronted outside the Simses' apartment in a photo array which Webster claims was unduly suggestive. A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances. *Fraylon v. State* (1989), Ind., 542 N.E.2d 559, 562. The mere variation in the appearance of individuals in an array does not render an array impermissibly suggestive. *Id.; see also Neal v. State* (1988), Ind., 522 N.E.2d 912; *Henson v. State* (1984), Ind., 467 N.E.2d 750.

■ Helton described the man he confronted outside the Simses' apartment to police as a black male, in his twenties or thirties, whose skin was light-complected, and whose hair fell over his ears in loose curls. Webster argues his picture was the only photograph of a person with light skin used in the array. The record reflects the array included photographs of six black males with light to medium complexions. The trial court did not err in determining the array was not unduly suggestive.

■ Webster also argues Helton's identification testimony was inadmissible because he was not "100% positive," Record at 487, he confronted the man outside the Simses' apartment briefly where the lighting was not "real good," Record at 480, and he did not identify Webster at trial. These factors go to the weight and credibility of the identification evidence and not to its admissibility.

The trial court did not err in admitting the identification evidence.

## III.

■ Webster argues the trial court erred in sustaining the State's objection to allowing the testimony of his alibi witness.

Webster acknowledges IC 35–36–4–3(b) (1988) provides the trial court shall exclude alibi evidence if the defendant fails to file a notice of alibi pursuant to IC 35–36–4–1 (1988) and the defendant fails to show good cause for his omission. Determination of good cause for the omission is a matter for the sound discretion of the trial court. *Seay v. State* (1988), Ind., 529 N.E.2d 106, 110. Webster claimed his failure to timely file a notice of alibi was unavoidable because the witness was unsure as to the date he picked up Webster at a bus station outside Indianapolis; this explanation does not compel the conclusion the trial court abused its discretion in determining Webster failed to show good cause.

Citing *People v. Miller* (1930), 250 Mich. 72, 229 N.W. 475, Webster also argues the alibi witness's testimony was admissible because the State failed to object to his own alibi testimony. Webster testified, without objection, he was out of town when the crimes occurred. *James v. State* (1980), 274 Ind. 304, 411 N.E.2d 618, is much more

persuasive. In *James* the trial court allowed the defendant to testify as to an alibi without filing the required notice but refused to allow an alibi witness to testify. Affirming the trial court's decision, our supreme court concluded the trial court could have properly excluded all alibi evidence presented by the defendant and, therefore, rather than being prejudiced, the defendant received consideration not contemplated by the statute.

The trial court did not err in excluding Webster's alibi witness.

### IV.

Webster argues the evidence is insufficient to support his convictions. This court will not reweigh the evidence or judge the credibility of witnesses. We will review the evidence most favorable to the convictions and any reasonable inferences which may be drawn therefrom. If there is evidence of probative value from which a reasonable trier of fact could find the existence of each element of each offense beyond a reasonable doubt the convictions will be affirmed. *Everroad v. State* (1991), Ind., 571 N.E.2d 1240, 1244.

 Webster argues both Gilbert's and Helton's testimony were incredible and uncorroborated. A defendant may be convicted on the uncorroborated testimony of an accomplice. *Douglas v. State* (1988), Ind., 520 N.E.2d 427, 428. Gilbert testified he and Webster broke into three residences and divided or sold the property they removed from the homes. Further, Gilbert's testimony was corroborated. Both Gilbert and Helton linked Webster with the Simses' apartment. Each residence was entered in the same manner. Some of the stolen property was found in Webster's residence among his possessions.

This evidence is sufficient.

Judgment affirmed.

SULLIVAN and ROBERTSON, JJ., concur.