**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Feb 08 2012, 9:58 am
**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KENNETH A. HORTON, | ) |
| | ) |
| Appellant- Defendant, | ) |
| | ) |
| vs. | )  No. 82A01-1105-CR-231 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee- Plaintiff, | ) |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-0710-FB-1199

**February 8, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

After a jury trial, Kenneth Horton was convicted of robbery, a Class C felony, and auto theft, a Class D felony. Horton raises two issues for our review, which we restate as: 1) whether the trial court abused its discretion in admitting evidence seized during the execution of a search warrant when the warrant had not been signed by a judge or magistrate, and 2) whether the trial court abused its discretion in admitting an in-court identification using a photographic array. Concluding the trial court did not abuse its discretion in either respect, we affirm.

## Facts and Procedural History

In October 2007, Horton walked into a Fifth Third Bank branch wearing sunglasses and a mustard or rust-colored sweatshirt with the hood up. He was carrying a hand-held police scanner. Horton handed a bank teller a note that said "I have a gun." The teller handed Horton money from her cash drawers, and he ran out. He drove away from the bank in a tan-colored Chevrolet minivan that did not have a license plate. Soon thereafter, police found an abandoned van in the parking lot of a nearby restaurant. In addition to matching the description of Horton's getaway vehicle, the van was confirmed as stolen from a nearby car dealership. Police officers discovered a hooded sweatshirt outside the restaurant that matched the description of what the bank robber was wearing. Surveillance video showed the driver of the van fleeing on foot toward a nearby apartment complex. After officers began talking with residents at the apartment complex, the residents indicated the descriptions given matched Horton, a fellow resident at the complex. Officers knocked at Horton's apartment, but no one answered.

The following day, police applied for a search warrant for Horton's apartment. Police obtained the warrant, but it was not signed by the judge. Police executed the warrant and found a police scanner and sunglasses inside a duffel bag in Horton's closet, which were later identified by witnesses as the same items Horton had during the robbery. Police also found a key to the tan minivan.

During the police department's investigation of the robbery, three bank employees were given a photo array to identify the robber. Two of the three employees identified someone other than Horton as the person most resembling the bank robber. The third employee could not make an identification. At trial, the third employee was once again shown a photo array and asked to identify the man who most resembled the bank robber, and she identified Horton as the robber. Horton now appeals. Additional facts will be supplied as necessary.

<u>Discussion and Decision</u>

I. Standard of Review

Trial courts have broad discretion in deciding whether to admit evidence, and we review such decisions only for an abuse of discretion. <u>Kimbrough v. State</u>, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. <u>Id.</u> Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Evidence Rule 103(a).

II. Evidence Gathered from Executing the Search Warrant

Horton acknowledges that the omission of a judge's signature on a search warrant will not invalidate the warrant because the signing of a search warrant is a ministerial act.

State v. Smith, 562 N.E.2d 428, 429 (Ind. Ct. App. 1990); see also Webster v. State, 579 N.E.2d 667, 669 (Ind. Ct. App. 1991) ("Moreover, the signature of the issuing judge on a search warrant is a ministerial requirement, and the failure of the judge to sign the original or a copy of the warrant does not invalidate the warrant provided the judge found probable cause existed and intended to issue the warrant."). As long as a judge or magistrate found probable cause and intended to issue the warrant, his or her signature is not an essential part of the warrant. Smith, 562 N.E.2d at 429. Horton argues there is nothing in the record indicating the judge found probable cause to issue a search warrant for his apartment.

The Vanderburgh trial court judge presiding over the search warrant, the Honorable Scott Bowers, testified at trial.

Q.      . . . Judge, did you get the opportunity to review the Affidavit for Search Warrant?
A.      Yes.
* * *
Q.      And you dated and signed the subscription, . . . is that correct?
A.      Yes.
Q.      Do you recall the circumstances of this Search Warrant and Affidavit?
* * *
A.      I recall that I had a warrant presented to me, and I remember an armed robbery that involved the [apartment complex]. The reason I remember the [apartment complex] is that in 1977 I actually lived in those apartment units . . . .
* * *
Q.      And how long were you a Judge for the Vanderburgh Superior Court . . .
A.      Twenty-four years.
* * *
Q.      And could you recall how many Search Warrants, Affidavits [sic] that were presented to you that you found to be insufficient to show probable cause?
A.      . . . I do have specific recollection of one affidavit for a warrant for arrest for child molesting I rejected and sent that to the prosecutor's

4

office for correction because the perpetrator's age was not stated, and that's an element of the offense. I had a search warrant that I rejected where I specifically recollect where the search affidavit indicated the search was related to a drug sale, and the warrant on its face called for the search for instrumentalities for the crime of burglary. So I sent that back to have the warrant corrected on that one. There may have been others, but it would be less than half a dozen in twenty four [sic] years.

Q. And on this particular Search Warrant do you have a recollection as to whether or not at that time you found probable cause based upon the affidavit?

A. . . . I believe that I told my wife that I had issued such a warrant because our prior being in that complex, and I would certainly remember if I had rejected the warrant.

* * *

A. . . . I would not have signed the Affidavit on it rejecting the warrant, because I would normally read through the affidavit, have the officer sign, the swearing officer, have him sign the affidavit then I would sign because it was sworn to before me.

* * *

Q. And it's your belief that you would not have signed the affidavit as being sworn to before you if you thought it did not show probable cause?

A. Absolutely not, and I would, like I said I would sign an affidavit and warrant together, that way everything is signed at the same time.

Q. And you this morning read the affidavit which was presented to you in 2007?

A. Yes, sir.

Q. And having read that would you have found probable cause based on the contents of that affidavit?

A. Yes.

Transcript at 145-51.

Horton contends "[t]here is no record whatsoever that judge actually found probable cause in this case, and that is what is required under both <u>Smith</u> and <u>Webster</u>." Appellant's Brief at 6. In <u>Smith</u>, this court concluded that even if the search warrant lacked the judge's signature, the warrant was still valid because a probable cause hearing was held and the judge determined probable cause existed for issuing the warrant. 562 N.E.2d at 430. In <u>Webster</u>, we concluded the lack of a signature on the search warrant

5

did not invalidate the warrant because an order book recorded the finding of probable cause and the judge's intention to issue the warrant. 579 N.E.2d at 669.

We cannot say that the trial court's denial of Horton's motion to suppress evidence resulting from the unsigned search warrant is clearly against the logic, facts, and circumstances that were before the trial court. Although the trial court did not have evidence from a probable cause hearing, as in Smith, or from an order book, as in Webster, evidence was presented supporting the conclusion that Judge Bowers found probable cause. Judge Bowers testified that he would have remembered finding a lack of probable cause and supported this statement by demonstrating how few search warrant affidavits he rejected in his twenty-four years as a trial court judge. He also testified to his belief that he mentioned to his wife he issued the warrant, and that he would not have signed the affidavit had he not found probable cause. We review the trial court's denial of a defendant's motion to suppress evidence for abuse of discretion. Here, the trial court did not abuse its discretion because evidence was presented to the court supporting a conclusion that Judge Bowers found probable cause.

### III. Photo Array

Horton contends the bank teller's identification of the robber during trial from a photo array was unduly suggestive because Horton was sitting in the courtroom next to defense counsel. Horton refers us to Parker v. State, 698 N.E.2d 737, 740 (Ind. 1998), where our supreme court stated that due process of the law under the Fourteenth Amendment requires suppression of testimony about a pre-trial identification when the procedure employed is unnecessarily suggestive. Horton acknowledges that this constitutional requirement applies to pre-trial identification rather than identification

6

during trial, but he requests that we extend the requirement to in-court identification procedures. As to this request, our supreme court has already spoken. In Harris v. State, 619 N.E.2d 577, 580 (Ind. 1993), Harris argued evidence of a witness's pretrial and in-court identification was impermissively suggestive and in violation of his due process rights. The court stated:

> Where a trial court has admitted evidence of pretrial and an in-court identification of the accused by the same witness, the reviewing court must determine whether, under the totality of the circumstances, the pretrial confrontation was so impermissibly suggestive and conducive to irreparable mistaken identification that the accused was denied due process of law under the Fourteenth Amendment. The reviewing court must first determine whether law enforcement officials conducted the out-of-court procedure in such a fashion as to lead the witness to make a mistaken identification. If, under the totality of the circumstances, the reviewing court finds the out-of-court procedures were not impermissibly and unnecessarily suggestive, both the evidence of the pretrial lineup and the in-court identification are considered to have been properly admitted by the trial court, and there is no need to proceed further.

Id. (citations and quotations omitted); see also Farrell v. State, 622 N.E.2d 488, 494 (Ind. 1993) ("Under the totality of the circumstances, we conclude that the pre-trial lineup was not impermissibly suggestive, and this evidence was properly admitted. Accordingly, we need not address whether an independent basis existed for [the victim's] in-court identification because it was also properly admitted by the trial court.").

Here, Horton does not contend that any pre-trial identification was impermissibly suggestive and conducive to irreparable mistaken identification. Nevertheless, any such argument would fail because none of the three witnesses who were asked to identify the robber from a photo array during the investigation of the robbery identified Horton as the culprit. Any discrepancies between witness identification prior to trial and during trial were appropriately left for the trier of fact to resolve.

7

Even if the in-court identification of Horton was in violation of his constitutional rights, any such error would be harmless in light of the substantial evidence presented against him. Surveillance video from where the van was abandoned revealed the robber running towards Horton's apartment complex, which was nearby. The hooded sweatshirt worn during the robbery, which was distinct in color, was found near Horton's apartment. A key to the stolen van used as a getaway vehicle was found in Horton's apartment, along with a hand-held police scanner like the one the robber carried and sunglasses resembling the ones worn during the robbery. Further, the descriptions given by witnesses match Horton: a black male over six feet tall with a gap between his front teeth and a stocky build. Even without any in-court identification of Horton, the State presented sufficient evidence to find Horton guilty of robbery and auto theft beyond a reasonable doubt.

## Conclusion

We conclude the trial court did not abuse its discretion in admitting evidence from the search of Horton's apartment or an in-court witness identification of Horton as the robber, and we therefore affirm.

Affirmed.

NAJAM, J., and VAIDIK., J. concur.